**RUDDEROW LAW GROUP**
A Professional Law Corporation
**Daniel T. Rudderow SBN: 174258**
dan@rudderowlaw.com
**Chris C. Chapman SBN: 234738**
chris@rudderowlaw.com
1301 Dove Street, Suite 800
Newport Beach, California 92660
Tel.: (949) 565-1344
Fax: (714) 677-4004

Attorneys for Plaintiff,
ANAHEIM MOBILE ESTATES, LLC, DBA ANAHEIM MOBILE ESTATES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAHEIM MOBILE ESTATES, LLC, dba ANAHEIM MOBILE ESTATES,<br><br>    Plaintiff,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. Violation of the Takings Clause's Prohibition on Private Takings Pursuant to the Fifth Amendment to the United States Constitution [42 U.S.C. § 1983];**<br><br>**2. Inverse Condemnation-Violation of the Takings Clause of the California Constitution [Cal. Const. Art. 1, § 19];**<br><br>**3. Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution;**<br><br>**4. Declaratory Relief.** |

Plaintiff, ANAHEIM MOBILE ESTATES, LLC, doing business as ANAHEIM MOBILE ESTATES ("Plaintiff"), by and through its undersigned counsel, hereby alleges as follows:

**PARTIES**

1.  Plaintiff, a Washington Limited Liability Company, owns and operates a mobilehome park located within and governed by the jurisdictions of the two

1. incorporated cities of Anaheim and Stanton in the County of Orange, California. The mobilehome park has 139 mobilehome spaces in the City of Anaheim and 90 mobilehome spaces in the City of Stanton. The mobilehome park's commonly used address is 3050 W. Ball Road, Anaheim, California 92804 (the "Park"). True and correct copies of the County of Orange GIS Maps are attached hereto as **Exhibit A** showing part of the Park in Anaheim and the other part in Stanton.

2. Defendant ROB BONTA is sued in his official capacity as the Attorney General of the State of California. Under Article 5, § 13 of the California Constitution, Attorney General Bonta is the "chief law officer of the State," with a duty to "see that the laws of the state are uniformly and adequately enforced." The Attorney General's responsibilities include enforcing the laws of the State of California, including Civil Code § 798.30.5 which is the statute that is the subject of this dispute.

3. Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1 through 20 and therefore sues defendants by such fictitious names. Plaintiff is informed and believes, and on that basis allege, that each of the fictitiously named defendants was the agent and/or employee of the named defendants, and in doing the acts herein alleged, was acting within the scope of such agency and/or employment and is responsible in some manner for the occurrences alleged herein. Plaintiff will amend or seek leave of court to amend this Complaint to allege the true names and capacities of such fictitiously named defendants when the same are ascertained. Defendants ROB BONTA and DOES 1 through 20 will be collectively referred to as "Defendants".

4. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned in this Complaint, Defendants, and each of them, were and are agents, principals, representatives, servants, masters, partners, trustees, associates, co-conspirators, employers and employees of each other, all acting within the course and scope of such capacities, within the actual or apparent authority of such

capacities, within the course and scope of such conspiracies, and with actual and/or constructive notice of the knowledge of their co-conspirators and each other.

## DIVERSITY AND FEDERAL QUESTION JURISDICTION AND VENUE

5.	This Court has subject matter jurisdiction under 28 U.S.C. § 1332 which confers original jurisdiction over "all civil actions where the matter in controversy exceeds the sum and value of $75,000, exclusive of interests and costs and is between … citizens of different States." There is complete diversity between the parties with an amount in controversy exceeds the jurisdiction amount, exclusive of costs and interest.

6.	Plaintiff is a State of Washington Limited Liability Company wherein all the members are domiciled outside of the State of California.  Defendants are citizens of the State of California.

7.	The present value of the Park exceeds $75,000 and the damages alleged exceed $75,000 as well. The amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action. *Hunt v. Washington State Apple Advertising Comm'n* (1977) 432 US 333, 347-348; *Meisel v. Allstate Indem. Co.* (ED CA 2005) 357 F.Supp.2d 1222, 1225.

8.	In addition, two Federal claims set forth herein are pursuant to the Fifth Amendment (42 U.S.C. § 1983) and Fourteenth Amendments of the United States Constitution based on Plaintiff's deprivation of constitutional rights. Accordingly, this Court also has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9.	This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiff's federal claims.  This Court has authority to grant the requested declaratory and injunctive relief, pursuant to 28 U.S.C. § 2201, and 42 U.S.C. § 1983, and to award attorney's fees and costs pursuant to, inter alia, 42 U.S.C. §

1988.

10. The real property at issue is located and the acts and omissions complained of herein occurred in the Central District of California. The Attorney General of the State of California also maintains an office in the Central District of California in Los Angeles, California. *Cal. Code Civ. Proc.* § 401. Accordingly, pursuant to 28 U.S.C. § 1391(b), venue is proper in this judicial district of the Central District of California.

## INTRODUCTION

11. This is a facial constitutional challenge to newly enacted California Civil Code § 798.30.5, which became effective on January 1, 2022. Section 798.30.5 imposes a restriction for rent adjustments in mobilehome parks located within and governed by the jurisdictions of two or more incorporated cities (defined by the statute as a "qualified mobilehome park"), prohibiting the qualified mobilehome park's management from increasing the gross rental rate for a tenancy for a mobilehome space more than 3% plus the percentage change in the cost of living, as defined, or 5%, whichever is lower, of the lowest gross rental rate charged at any time during the immediately preceding 12 months (hereafter referred to as "the automatic annual adjustment"). A true and accurate copy of Section 798.30.5 is attached hereto as **Exhibit B** and incorporated herein by this reference.

12. Section 798.30.5 also prohibits the qualified mobilehome park's management from increasing the gross rental rate for a tenancy in more than 2 increments over a 12-month period, after the tenant maintains a tenancy over a 12-month period. Section 798.30.5's subsection (f)(1)(A) and subsection (f)(2)(A) contain a type of rollback provision, providing that the law applies to all rent increases occurring on or after February 18, 2021.

13. It is well established that a rent control measure is unconstitutional on its face if it operates to deprive the property owner of a "just and reasonable" return on their property by foreclosing all avenues for a "fair return" increase in rents.

*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 169-173; *Pennell v. City of San Jose* (1988) 485 U.S. 1, 11; *Carson Mobilehome Park Owners Ass'n v. City of Carson* (1983) 35 Cal.3d 184, 191-192; *Baker v. City of Santa Monica* (1986) 181 Cal.App.3d 972, 985.)  Additionally, a rent control measure is impermissibly "confiscatory" if <u>no rent adjustment mechanism</u> is provided. *Apartment Ass'n of Greater Los Angeles v. Santa Monica Rent Control Bd.* (1994) 24 Cal.App.4th 1730, 1739 (regulation facially invalid if it does not allow any post-rent control purchaser to petition for base rent increase on any ground); *City of Berkeley v. City of Berkeley Rent Stabilization Bd.* (1994) 27 Cal.App.4th 951, 979-982 (no abuse of discretion in allowing fair return on investment to post-1979 purchasers via rent adjustment). Here, newly enacted Civil Code Section 798.30.5, contains no rent adjustment mechanism.  Qualified mobilehome park owners are simply limited to 3% to 5% rent increased—period.  There is no provision within Section 798.30.5, which provides the qualified mobilehome park owner, such as Plaintiff, the opportunity to apply for a rent increase in order to obtain a "just and reasonable" return on the owner's property.  Since Section 798.30.5 provides for no rent adjustment mechanism at all, Section 798.30.5 is unconstitutional on its face because it deprives qualified mobilehome park owners, including Plaintiff, a "just and reasonable" return on their property by foreclosing all avenues for a "fair return" increase in rents.

14. Plaintiff asserts that Civil Code § 798.30.5, and Defendants' enforcement thereof, violate Plaintiff's civil and constitutional rights and constitute an uncompensated taking of private property on violation of the Fifth Amendment to the United States Constitution and Article I, Section 19 of the California Constitution, entitling Plaintiff to payment of just compensation.

15. Civil Code § 798.30.5 also violates Plaintiff's right to notice or opportunity to be heard, and to due process, as guaranteed to it by the Fourteenth Amendment.

16. Finally, Civil Code § 798.30.5 deprives Plaintiff of its property right in past and future rent increases to benefit a narrow class of private individuals. Specifically, those who lease spaces at the Park. In so doing, Defendants actions constitute "private takings" under the federal and state constitutional. A taking must be for a public use or purpose, not a private one.

17. Plaintiff seeks declaratory and injunctive relief for Civil Code § 798.30.5 as applicable to mobilehome spaces and mobilehome parks.

18. Plaintiff has suffered economic losses, damages and harm relating to the Park as a result of the passage of Civil Code § 798.30.5. The Code has caused rental losses for the Park since the date enacted. Total rent losses are anticipated to increase significantly.

## FACTUAL BACKGROUND

19. Plaintiff is the owner and operator of the Park, which is a qualified mobilehome park located within and governed by the jurisdictions of two incorporated cities, approximately 139 mobilehome spaces in the City of Anaheim, and approximately 90 mobilehome spaces in the City of Stanton. The Park contains a total of 229 mobilehome spaces between these two incorporated cities.

20. Located within the Park are individual lots commonly known as "spaces," "lots," or "sites," rented to tenants (defined synonymously as "homeowners" pursuant to Civil Code § 798.9, providing that a homeowner is ". . . a person who has a tenancy in a mobilehome park under a rental agreement"), who occupy mobilehomes.

21. Neither the City of Anaheim nor the City of Stanton have enacted rent control for rental housing, including mobilehome parks.

***Mobilehome Residency Law***

22. The Mobilehome Residency Law (California Civil Code sections 798 through 799.11) is a state statute that regulates the terms and conditions of tenancies in mobilehome parks. A "tenancy" in this context consists of the use of a space

within a mobilehome park on which the tenant locates, maintains, or occupies a mobilehome, and uses the services and facilities of the park.

### Civil Code § 798.30.5 Rent Control Provisions

23.     On or about February 18, 2021, lead authors Quirk-Silva (A) and Chiu (A) introduced Assembly Bill 978 (hereafter "AB 978") to the California Assembly, titled, "An act to amend Sections 1946.2 and 1947.12 of, and to add and repeal Section 798.30.5 of, the Civil Code, relating to mobilehomes." AB 978, as ultimately amended, was signed into law by State Governor Gavin Newsom, on July 23, 2021, and Chaptered by Secretary of State - Chapter 125, Statutes of 2021. The law became effective on January 1, 2022, and will be operative until January 1, 2030.

24.     Section 798.30.5 contains a rent control provision limited to qualified mobilehome parks. Plaintiff operates such a qualified mobilehome park as of January 1, 2022, and has been directly affected and regulated by Section 798.30.5.

25.     Section 798.30.5 imposes the automatic annual adjustment. The law contains other provisions not pertinent to the constitutional violations comprising the gravamen of Plaintiff's herein.

26.     Section 798.30.5 fails to include an adjustment mechanism, other than the automatic annual adjustment described in paragraph 2, above. The qualified mobilehome park's owner is deprived of any opportunity to petition an administrative or other agency, to show that the automatic annual adjustment will not be sufficient to provide the qualified mobilehome park's owner with the constitutionally mandated just and reasonable return on the property, a constitutional requirement enunciated in the California Supreme Court's decision in *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129. Section 798.30.5 also does not provide the opportunity to demonstrate to an administrative agency that the base rent of February 18, 2021, does not reflect general market conditions, and the opportunity to show what the base rent must, as also required as a constitutional matter in

*Birkenfeld*. Completely lacking from Section 798.30.5 is a mechanism to provide for appointment of an administrative agency at all.

27. The California Supreme Court, in the plaintiff's challenge to the City of Berkeley's rent control ordinance, ruled the ordinance unconstitutional in part because of the failure to provide the opportunity for the landlord to petition for an increase greater than the automatic annual adjustment where necessary to prevent a confiscatory result, without a substantially greater incidence and degree of delay than is practically necessary. As explained by the Court:

> Here the charter amendment drastically and unnecessarily restricts the rent control board's power to adjust rents, thereby making inevitable the arbitrary imposition of unreasonably low rent ceilings. It is clear that if the base rent for all controlled units were to remain as the maximum rent for an indefinite period many or most rent ceilings would be or become confiscatory. For such rent ceilings of indefinite duration an adjustment mechanism is constitutionally necessary to provide for changes in circumstances and also provide for the previously mentioned situations in which the base rent cannot reasonably be deemed to reflect general market conditions. The mechanism is sufficient for the required purpose only if it is capable of providing adjustments in maximum rents without a substantially greater incidence and degree of delay than is practically necessary. "Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them ...." *Smith v. Illinois Bell Tel. Co.* (1926) 270 U.S. 587, 591 (enjoining enforcement of telephone rates because of unreasonable delay in acting upon application for rate increase). The charter amendment is constitutionally deficient in that it withholds powers by which the rent control board could adjust maximum rents without unreasonable delays and instead requires the

Board to follow an adjustment procedure which would make such delays inevitable. *Birkenfeld*, supra, 17 Cal.3d at 15.

28. The Berkeley ordinance at issue in *Birkenfeld* did provide for an application to the rent control board to request a rent increase greater than the automatic annual adjustment. Its constitutional repugnance stemmed from the inevitable delay inherent in the adjustment procedure. Here, Civil Code § 798.30.5 is even more offensive from a constitutional perspective, in that there is no provision whatsoever affording the qualified mobilehome park's owner the opportunity to seek an adjustment greater than the automatic annual adjustment, where necessary to provide a just and reasonable return and to prevent a confiscatory result. Not only that, but the Defendants have not even provided for an administrative agency or board to which such an application may be taken. As such, Civil Code § 798.30.5 is unquestionably repugnant to the U.S. and State Constitutions is therefore null and void; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is in legal contemplation as inoperative as though it had never been passed. Such a regulation may be invalid on its face when its terms will not permit those who administer it to avoid confiscatory results in its application to the complaining parties. *Birkenfeld, supra*, 17 Cal. 3d at 165, citing, *City of Miami Beach v. Forte Towers*, Inc. (Fla. 1974) 305 So.2d 764, 768; see *Mora v. Mejias* (1st Cir. 1955) 223 F.2d 814.

29. Nor can the constitutional defect be cured simply by excision, but only by additional provisions that are beyond the Court's power to provide. *Birkenfeld, supra,* 17 Cal.3d at 173. That was the situation in *Birkenfeld*, and is the situation, even more so, with respect to Civil Code § 798.30.5. Here, the Court would not only have to draft and add provisions creating a valid procedural mechanism, the Court also would have to create an administrative agency to administer the law and provide rules governing the agency's actions.

30. Defendants intend to enforce the statute against all affected parks,

including Plaintiff's Park. Plaintiff desires and beseeches the Court to issue a judicial determination and declaration that Civil Code § 798.30.5 is, on its face, hopelessly and incurably unconstitutional, rendering it null, void and unenforceable for all purposes, for all of the reasons and in all of the ways as alleged herein.

31. Plaintiff is presently and continuously injured by Defendants' enforcement of the statute in derogation of Plaintiff's constitutional rights. Plaintiff has no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiff because Plaintiff is unable to engage in constitutionally protected activity due to California's ongoing enforcement of Civil Code § 798.30.5. Plaintiff therefore seeks injunctive relief to prevent the State of California from enforcing the statute against Plaintiff in violation of its constitutional rights.

32. Furthermore, declaratory relief is proper because if a judgment arises out of Civil Code § 798.30.5, a prevailing party is entitled to reasonable attorney's fees and costs. Civil Code § 798.85. Furthermore, a park may be liable for damages of up to $2,000 for any willful violation under Section 798.30.5. Civil Code § 798.86.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

33. Exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983. A takings violation is complete at the time of the taking and pursuit of a remedy need not await any subsequent state action. *Knick v. Township of Scott, Pennsylvania* (2019) 139 S.Ct. 2162, 2172. Furthermore, Plaintiff alleges that Defendant's administrative process fails to establish a clearly defined machinery for the submission, evaluation and resolution of complaints and there is no standard for reconsideration or review.

# FIRST CAUSE OF ACTION

## Violation of the Taking's Clause's Prohibition on Private Takings

## Pursuant to the Fifth Amendment of the U.S. Constitution

## 42 U.S.C. § 1983

## (Against all Defendants)

34. Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

35. The Takings Clause provides that private property shall not "be taken for public use, without just compensation." *U.S. Const.*, *amend. V*. (*XIV* Amendment making Takings Clause applicable to the states); *Kelo v. City of New London, Conn.* (2005) 545 U.S. 469, 496.

36. The role of the Takings Clause is in "barring Government from forcing some people alone to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole." *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 537; see also *Armstrong v. United States* (1960) 364 U.S. 40, 49. Government action may violate the Takings Clause where it is "the functional equivalent of a practical ouster of the owner's possession" or "in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle*, 544 U.S. at 537.

37. If the government "fails to meet the 'public use' requirement," then "that is the end of the inquiry," and "[n]o amount of compensation can authorize such action." *Lingle*, 544 U.S. at 543.

38. It has long been accepted that the government "may not take the property of A for the sole purpose of transferring it to B." *Kelo,* 545 U.S. at 477. The government is also not "allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Id.* at 478. If a taking is designed simply "to benefit a particular class of identifiable

individuals," then the taking is not for a "public use" consistent with the Public Use Clause and is therefore unconstitutional. *Id.* A taking can occur even when, "a stranger directly invades and occupies the owner's property" and does not pass to or through the government's hands. *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 436.

39. To withstand "facial" scrutiny, a rent control law must avoid "confiscatory" results and thus must provide a proper mechanism for ensuring landlords a "just and reasonable" return on their property. *Birkenfeld v. City of Berkeley* (1976) 17 C3d 129, 165; *Galland v. City of Clovis* (2001) 24 C4th 1003, 1021.

40. A rent control measure is impermissibly "confiscatory" if no rent adjustment mechanism is provided. *Apartment Ass'n of Greater Los Angeles v. Santa Monica Rent Control Bd.* (1994) 24 CA4th 1730, 1739; see *City of Berkeley v. City of Berkeley Rent Stabilization Bd.* (1994) 27 CA4th 951, 979-982. "A rent control system is only constitutional when it contains a mechanism for adjusting rents across the board which will avoid the confiscatory effects of inflation on rents frozen by regulations." City of Berkeley, 27 CA4th at 969.

41. If a property owner is deprived of a "fair return hearing" on an application for a "just and reasonable" return, the ordinance is vulnerable to a regulatory taking challenge. *Kirkpatrick v. City of Oceanside* (1991) 232 CA3d 267, 279.

42. If a rent control scheme indefinitely freezes landlord profits, imposes an absolute cap on rent increases, or prohibits a particular class of landlords from obtaining rent increases it will inevitably lead to confiscatory results and succumb to facial challenge. *Donohue v. Santa Paula West Mobile Home Park* (1996) 47 CA4th 1168, 1179.

43. A taking may be redressed under 42 U.S.C. § 1983. *Pakdel v. City and County of San Francisco, California* (2021) 141 S.Ct. 2226, 2230.

44. Civil Code § 798.30.5's application to the Park has caused a regulatory and physical taking of Plaintiff's property without just compensation because there is no opportunity for a fair return hearing. As a result, Plaintiff is forced to bear a burden that should be borne by society as a whole.

45. Plaintiff has reasonable investment backed expectations that have not been complied with by Defendants.

46. The taking is private in that it "benefits a particular class of identifiable individuals"—i.e., certain tenants renting spaces at the Park, making it *per se* unconstitutional. *Kelo*, 545 U.S. at 490.

47. Furthermore, Civil Code § 798.30.05 fails to advance any legitimate government interest.

48. Plaintiff is entitled to just and reasonable compensation, declaratory relief pursuant to 42 U.S.C. §§ 1983 and 1988, and temporary, preliminary, and injunctive relief.

49. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are immediately enjoined from enforcing Civil Code § 798.30.05 to the Park.

## SECOND CAUSE OF ACTION

**Inverse Condemnation – Cal. Const., Art. 1, § 19**

**(Against all Defendants)**

50. Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51. The California Constitution provides that "[p]rivate property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Cal. Const., Art. I, § 19(a).

52. The Legislature cannot take private property for a private use or

purpose. *Cash v. Southern Pacific R. Co.* (1981) 123 Cal.App.3d 974, 977 n.2; *People, By and Through Dept. of Public Works v. Lagiss* (1963) 223 Cal.App.2d 23.

53. The application of Civil Code § 798.30.5 to the Park is an unconstitutional taking for a private use, in violation of the California Constitution. Plaintiff's property right in rent increases of spaces at the Park has been stripped away. The taking is not a "public use" or "purpose," as it "benefits a particular class of identifiable individuals"—i.e., certain Park tenants. As this is a private taking, Civil Code § 798.30.5 is *per se* unconstitutional.

54. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are immediately enjoined from seeking to enforce the Civil Code § 798.30.5 to the Park.

55. The private taking is in no way related to any legitimate or recognized governmental interest.

56. Plaintiff demands just compensation for the taking of its Property, declaratory and injunctive relief, attorney's fees, costs of suit, fees, and expenses pursuant to Code of Civil Procedure § 1036 and other applicable laws.

## THIRD CAUSE OF ACTION

### Violation of the Due Process Clause

### (Against all Defendants)

57. Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

58. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

59. Before the government can permanently deprive a person of a property

interest, that person must receive notice. *D & M Financial Corp. v. City of Long Beach* (2006) 136 Cal.App.4th 165, 173. "Before taking an action which will affect a property interest protected by the Due Process Clause of the Fourteenth Amendment, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.* (1950) 339 U.S. 306, 314. Constitutionally sufficient notice is "such as one desirous of actually informing the [interested parties] might reasonably adopt to accomplish it." *Id*. at 315. "The notice must be of such nature as reasonably to convey the required information[.]" *Id*. at 314.

60. Civil Code § 798.30.5 has destroyed Plaintiff's property right in lawful rent increases on mobilehome park spaces, as provided for in leases with tenants. It has done so without notice or an opportunity to be heard. Thus, Civil Code § 798.30.5 violates Plaintiff's due process rights.

61. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are immediately enjoined from implementing and enforcing Civil Code § 798.30.5.

## FOURTH CAUSE OF ACTION

**Declaratory Relief – Unconstitutionality of Civil Code § 798.30.5**

**(Against all Defendants)**

62. Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

63. Plaintiff seeks a declaration of the respective rights and duties of the parties.

64. Defendants are requiring Plaintiff comply with Civil Code § 798.30.5 with respect to monthly rents at all spaces at the Park. Plaintiff seeks a declaration that Civil Code § 798.30.5 is unconstitutional and/or does not apply to the Park.

65. Defendants' application of Civil Code § 798.30.5 to the Park is unlawful, invalid, void, being applied with animosity towards Plaintiff, and/or unconstitutional and Plaintiff seeks a declaration, accordingly, including that Plaintiff's private land is being taken for private use, without just compensation.

66. Defendants are treating Plaintiff more harshly than others in violation of federal and state laws requiring parity.

67. Plaintiff is informed and believes, and thereon alleges, that Defendants deny these allegations. Therefore, there is an actual controversy as to Civil Code §798.30.5 application to the park.

68. Accordingly, Plaintiff hereby requests a judicial declaration that Civil Code § 798.30.5 is unconstitutional.  Such a declaration is necessary and appropriate at this time and under the circumstances in order that the Plaintiff may ascertain its rights and duties under Civil Code § 798.30.5. Plaintiff has no adequate remedy at law and will suffer irreparable harm if this controversy persists unresolved, and its rights and obligations (if any) under Civil Code § 798.30.5 are not established by declaratory judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For just compensation for the taking of Plaintiff's property;

**ON THE SECOND CAUSE OF ACTION**

2. For just compensation for the taking of Plaintiff's property;

**ON THE THIRD CAUSE OF ACTION**

3. For a declaration by this Court that Civil Code § 798.30.5 constitutes a denial of Plaintiff's due process rights;

**ON THE FOURTH CAUSE OF ACTION**

4. For a judicial determination and declaration that Civil Code § 798.30.5 is unconstitutional, null, void, and has no effect and/or does not apply to the Park;

5. For damages incurred by Plaintiff according to proof;

**<u>ON ALL CAUSES OF ACTION</u>**

6. That the court issue appropriate pre- and post-judgment orders restraining and enjoining Defendants from applying or enforcing Civil Code § 798.30.5 as to the Park in a manner that violates the Constitution of the United States of America and/or the California Constitution;

7. For a judicial declaration of the respective rights and duties of the parties;

8. Temporary, preliminary, and/or permanent injunctive relief as may be appropriate;

9. For its costs in bringing this action, including attorney's fees, to the extent permitted by law; and

10. For such other and additional relief as may be granted by the Court.

Dated:  February 28, 2022    **RUDDEROW LAW GROUP**

               By: /s/ Chris C. Chapman
                 Chris C. Chapman
                 Attorneys for Plaintiff,
               ANAHEIM MOBILE ESTATES, LLC,
               DBA ANAHEIM MOBILE ESTATES